749 P.2d 910

STATE of Arizona, Appellee,

v.

Gregory RUSHING, Appellant.

No. CR–86–0210–AP.

Supreme Court of Arizona,
En Banc.

Jan. 5, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Eric J. Olsson, Asst. Attys. Gen., Tucson, for appellee.

Blaser, Kelly & Don, P.C. by Thomas G. Kelly, III, Tucson, for appellant.

MOELLER, Justice.

## JURISDICTION

Defendant Gregory Rushing appeals from his convictions and sentences for aggravated assault, misdemeanor assault, burglary, and theft. On appeal, he makes two contentions:

1. The trial court erred in admitting photographs showing the victims' injuries; and

2. The trial court erred in failing to advise the defendant that the sentences imposed in the instant case would be consecutive to the sentences imposed in the cases where he violated his probation.

On these two issues, we find no error and affirm the convictions and sentences on the aggravated assault count, the misdemeanor assault count, and the burglary count. Based upon our review of the entire record for fundamental error, we conclude that a modification of the theft conviction is required. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031.

## FACTS

At approximately 11:00 p.m. on May 3, 1985, an intruder broke into the Florence, Arizona home of an elderly ill woman. The woman's sister, also elderly and somewhat infirm, was present, visiting her sister. The intruder immediately began beating the two women and making sexual advances upon them. As the assaults continued, the man alternated between the women, abusing one until she lost consciousness and then turning to attack the other. Finally, one of the sisters escaped and summoned help from neighbors. The neighbors telephoned the police, and one neighbor started toward the house where the attack was occurring. As he approached the house, he observed a man burst out of the house carrying a "bag" under his arm. The "bag" was the purse of one of the victims.

The attacker was observed fleeing on foot. The victims' neighbors saw a man fitting a general description of the attacker in the vicinity of a home where a party was in progress. The police concluded that the attacker might be at the party. Officers observed a panel truck leave the party. When police were unable to locate the assailant at the party, they contacted the owner of the panel truck who informed them that he had given the defendant a ride home from the party.

When police contacted defendant, he was wearing clothes similar to those worn by the attacker. He was also wearing a wedding band with the inscription "GR to AM" and a date "7/22/09." This was the wedding ring of the victims' parents and belonged to one of the victims, who had removed it from her hand and placed it in her purse shortly before the attack. That purse was stolen during the attack. Abundant other evidence tied defendant to the crimes.

After defendant was found guilty by a jury, he waived jury trial on the state's allegation of a prior felony conviction and entered an admission to it. At the sentencing hearing, the trial court found that defendant was on probation for two separate felonies at the time of the instant offenses, which triggered the life imprisonment provision of A.R.S. § 13–604.02 insofar as the aggravated assault count was concerned. He received aggravated sentences on the remaining counts to be served concurrently with his life sentence. However, all of the new sentences were ordered to be served consecutively to the sentences defendant received on his probation revocations.

## ADMISSION OF PHOTOGRAPHS

The trial judge admitted a number of photographs into evidence which depicted the injuries suffered by the victims. Defendant, relying largely on State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983), argues that the photographs should not have been admitted because their prejudicial effect outweighed their probative value.

Our analysis begins by observing that decisions concerning the admission of evidence are within the sound discretion of the

trial court. Absent an abuse of that discretion, a reviewing court will not overturn the trial court. *State v. Hensley*, 142 Ariz. 598, 602, 691 P.2d 689, 693 (1984).

While *Chapple* discusses and clarifies the rules concerning the admissibility of allegedly "inflammatory" photographs, the decision simply applies Rules 402 and 403 of the Arizona Rules of Evidence. To be admissible into evidence, photographs, like all other evidence, must first be relevant. Rule 402, Arizona Rules of Evidence; *Chapple*, 135 Ariz. at 288, 660 P.2d at 1215. Second, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403, Arizona Rules of Evidence. *See also Chapple*, 135 Ariz. at 288, 660 P.2d at 1215. Thus, we must first address the relevancy of the evidence.

█ Rushing was charged with two counts of aggravated assault under A.R.S. § 13-1204(A)(1) on the theory that he had caused "serious physical injury" to the victims. "Serious physical injury" includes "physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(31) (formerly A.R.S. § 13-105(29)). To prove this element, the state offered the testimony of a doctor and one of the victims. This testimony was illustrated and supplemented by the photographs. The trial court certainly did not abuse its discretion in finding the photographs relevant.

Nor did the court abuse its discretion in finding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. The photographs are not gruesome. Admittedly, they are somewhat unpleasant, but they accurately and fairly depict the results of the defendant's crimes, which were relevant issues in the case. *Compare Chapple*, 135 Ariz. at 287, 660 P.2d at 1214; *State v. Moorman*, 154 Ariz. 578, 586, 744 P.2d 679, 687 (1987). Obviously, they did not so inflame the jury as to render it

incapable of making critical factual determinations. This is amply demonstrated by the fact that the jurors acquitted the defendant of a charge of sexual assault and convicted him of only the lesser-included offense of simple assault on one of the victims. There was no error in admitting the photographs.

## VOLUNTARINESS OF ADMISSION TO PRIOR FELONY

Following the jury verdicts, defendant waived his right to a jury trial on the state's allegation of a prior felony conviction and entered an admission to it. During this proceeding, the trial court carefully and thoroughly questioned the defendant about his waiver of rights and carefully and accurately explained how the admission, if accepted, would increase the range of sentences. Obviously mindful that the life imprisonment provisions of A.R.S. § 13-604.02 would come into play on the aggravated assault charge if the defendant were also found to have been on probation, the trial court carefully explained that the new sentence ranges would not apply to that count.

█ On appeal, defendant claims that his admission to the prior felony was involuntary because he was not informed that if he was sentenced to life imprisonment under A.R.S. § 13-604.02, the sentence would be consecutive to any sentence received on his probation violations. Defendant, however, misconstrues the effect of his admission to a prior felony. He did not receive life imprisonment consecutive to his probation revocation sentence because he admitted to a prior felony conviction. He received his consecutive life sentence because the trial court later, and independently, found that he was on probation when the aggravated assault was committed. That finding, not the defendant's admission of a prior felony, triggered the consecutive sentence provision of A.R.S. § 13-604.02. The pertinent part of that statute requires life imprisonment consecutive to the probation revocation for "a person convicted of any felony offense involving ... the intentional or knowing infliction of serious physical

injury upon another ... *if committed while the person is on probation* for a conviction of a felony offense...." (Emphasis added.) The defendant's waiver of jury trial and his admission to a prior felony are unrelated to his status as a probationer. At the sentencing hearing, the court found defendant had been on probation. This is a finding which our law leaves to the court, not the jury. *State v. Hurley*, 154 Ariz. 124, 130, 741 P.2d 257, 263 (1987). In this case, the court made the finding by taking judicial notice, without objection, of two of its own files. This was proper evidence for the court to consider and is sufficient to sustain the finding.[1] *See State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985).

■ We further note, however, that even if defendant admitted that he was on probation, such an admission would not be rendered defective for failure of the trial court to advise him that his new sentence would be consecutive to that received on his probation revocation. In *State v. Allie*, 147 Ariz. 320, 710 P.2d 430 (1985), this court held that a criminal defendant has no reason to believe that a sentence imposed under A.R.S. § 13–604.02 [then A.R.S. § 13–604.01(A)] would not run consecutively to the sentence imposed after probation revocation. Thus, this court held that an admission of probationary status by a defendant informed of the requirement for consecutive sentences was not involuntary. *State v. Barksdale*, 143 Ariz. 465, 694 P.2d 295 (App.1985), relied upon by defendant here, is disapproved to the extent it suggests otherwise.

### THE THEFT COUNT

■ Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and A.R.S. § 13–4035, we are required to review the record for fundamental error. We conclude that defendant's conviction for theft must be modified because of an insufficiency of evidence on the issue of value. Defendant was charged with theft of property having a value of $100 or more but less than $250. "Value" means fair market value. A.R.S. § 13–1801(A)(14).[2] The prosecution contended that two items in the stolen purse had an aggregate value of at least $100. Those items were $40 in cash and the gold wedding ring previously mentioned. Thus, if there was sufficient evidence in the record to establish that the ring had a fair market value of $60 or more, we would affirm.

The record, however, lacks any substantial evidence to support a factual finding that the ring had a fair market value of $60 or more. Ordinarily, the owner of property is competent to give an opinion of its value. *Acheson v. Shafter*, 107 Ariz. 576, 578, 490 P.2d 832, 834 (1971). The owner of the ring, however, did not testify. The owner's sister, the other victim, provided this testimony:

Q. Now, the ring, which is State's Exhibit No. 13, that was your mother's ring, you said?

A. Yes.

Q. Do you know how much that ring is worth?

A. No, I don't know how much. It's years.

Q. Do you know if it's worth more than a hundred dollars?

A. I guess, you know, gold is—

. . . .

Q. BY MR. HUSK (prosecutor): Do you think it is worth more than a hundred dollars?

A. I guess so. It's pure gold.

---

1. We see this as entirely consistent with the requirements of *State v. Hurley*, 154 Ariz. at 132, 741 P.2d at 265. In *Hurley*, we expressed the need for the release status of A.R.S. § 13–604.02 to be proved by reliable documentary evidence. The court's own records certainly meet this standard. If the defendant was concerned with the reliability of the records, he was free to challenge the judicial notice. *See* M. Udall & J.

Livermore, *Arizona Practice: Law of Evidence* § 151 (2d ed. 1982).

2. While A.R.S. § 13–1801(A)(14) allows alternate means for valuing certain property, no such alternate means was advanced here. We therefore confine our discussion to proof of "fair market value."

It is immediately apparent from quoting this testimony that there is not sufficient substantial evidence to support a finding that this 76–year–old ring had a fair market value of $60 or more. Accordingly, the defendant's motion for a directed verdict on that portion of the theft charge which alleged a value of $100 or more should have been granted. We note that if the ring had been taken from the person of one of the victims, its value would be immaterial under A.R.S. § 13–1802(C). However, that theory of theft was neither pled nor proven and the evidence shows that the theft was not, in fact, from the person of the victim. Thus, the conviction for theft must be modified to reflect that it is for theft of property having a value less than $100, a class 1 misdemeanor. *See State v. Corrales*, 131 Ariz. 471, 473, 641 P.2d 1315, 1317 (App.1982).

## DISPOSITION

Defendant's convictions and sentences for aggravated assault, misdemeanor assault, and burglary are affirmed. The conviction for theft, a class 6 felony, is modified to reflect conviction for theft, a class 1 misdemeanor. The sentence on the theft conviction is vacated, and the case is remanded for resentencing on the modified conviction for misdemeanor theft.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.